AO 191 (Rev. 01/09) Report of a Grand Jury's Failure to Concur in an Indictment



FILED
IN OPEN COURT

DEC 11 2025

CLERK U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

# UNITED STATES DISTRICT COURT

for the

Eastern District of Virginia

United States of America )
v. )
)
)
LETITIA A. JAMES )
_____
*Defendant*

## REPORT OF A GRAND JURY'S FAILURE TO CONCUR IN AN INDICTMENT

As the foreperson of the grand jury of this court at a session held at _____Alexandria, Virginia_____ on _12/11/25_____ , I report that 12 or more grand jurors did not concur in finding an indictment in this case. Under Fed. R. Crim. P. 6(c), this record is being filed with the court clerk and will *not* be made public unless the court orders otherwise.

Date: _12/11/25_____

Pursuant to the E-Government Act,
The original of this page has been filed
under seal in the Clerk's Office

_____
*Foreperson's signature*

AO 190 (Rev. 01/09) Record of the Number of Grand Jurors Concurring in an Indictment

# UNITED STATES DISTRICT COURT

## for the

### Eastern District of Virginia

*FILED IN OPEN COURT*

*DEC 11 2025*

*CLERK U.S. DISTRICT COURT*
*ALEXANDRIA, VIRGINIA*

|  |  |
|---|---|
| United States of America | ) |
| v. | ) |
|  | ) |
| LETITIA A. JAMES | ) |
|  | ) |
|  | ) |
|  | ) |
|  | ) |
|  | ) |
|  | ) |
|  | ) |
|  | ) |
|  | ) |
| *Defendant(s)* | ) |

Case No.    2:25-CR-

## RECORD OF THE NUMBER OF GRAND JURORS CONCURRING IN AN INDICTMENT

As the foreperson of the grand jury of this court at a session held at _____Alexandria, Virginia_____ on _____12/11/2025_____ , I certify that *(specify number)* _____ grand jurors concurred in the indictment in this case. Under Fed. R. Crim. P. 6(c), this record is being filed with the court clerk and will *not* be made public unless the court orders otherwise.

Date: _____12/11/2025_____                          _____

*Foreperson's signature*

FILED
IN OPEN COURT

DEC 1 1 2025

CLERK U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 2:25-CR- |
| | ) | |
| v. | ) | 18 U.S.C. § 1344 |
| | ) | Bank Fraud |
| LETITIA A. JAMES, | ) | (Count 1) |
| | ) | |
| *Defendant.* | ) | 18 U.S.C. § 1014 |
| | ) | False Statements on a |
| | ) | Loan Application |
| | ) | (Counts 2-3) |
| | ) | |
| | ) | 18 U.S.C. § 982(a)(2)(A) |
| | ) | Criminal Forfeiture |
| | ) | |

INDICTMENT

December 2025 TERM - At Alexandria, Virginia

THE GRAND JURY CHARGES THAT:

GENERAL ALLEGATION

1.      At all times relevant to this indictment, LETITIA A. JAMES (hereinafter referred to as "JAMES") was the sole borrower on an August 17, 2020, residential mortgage loan for a property located at 3121 Peronne Avenue, Norfolk, Virginia (hereinafter referred to as "the Peronne property").

2.      At all times relevant to this indictment, OVM Financial, Inc. (hereinafter referred to as "OVM Financial"), was a private mortgage lending company located in Virginia Beach, Virginia, engaged in the business of originating and underwriting residential mortgage loans, secured by an interest in the underlying residential real estate whose activities affected interstate commerce.   OVM Financial was a "mortgage lending business" within the meaning of Title 18, United States Code, Section 27, and was a "financial institution" within the meaning of Title 18,

1

United States Code, Section 20(10).   OVM Financial made the August 17, 2020, residential mortgage loan to JAMES related to the Peronne property.

COUNT ONE

3.    The General Allegations and factual allegations of the Indictment are incorporated as if fully repeated verbatim herein.

4.    Beginning in or about June 2020, continuing through in or about January 2024, the exact dates being unknown, in the Eastern District of Virginia and elsewhere, defendant LETITIA A. JAMES, and others both known and unknown to the Grand Jury, did knowingly execute and attempt to execute a scheme and artifice to defraud OVM Financial, a mortgage lending business and financial institution, as defined by 18 U.S.C. §§ 20 and 27, and to obtain monies, funds, credits, assets, securities, and other property owned by and under the custody and control of OVM Financial by means of materially false and fraudulent pretenses, representations, and promises, which scheme and artifice, and the execution thereof, operated in substance as follows:

THE SCHEME AND ARTIFICE TO DEFRAUD

5.    The purpose of the scheme and artifice to defraud was to obtain property and money owned by and under the custody and control of OVM Financial by means of materially false and fraudulent, pretenses, representations, and promises.

6.    It was part of the scheme and artifice to defraud that defendant JAMES submitted and caused to be submitted to OVM Financial various residential loan applications to OVM Financial for the purchase of the Peronne property, a three (3) bedroom, one (1) bathroom residence, in which she falsely represented that the Peronne property would be a "Secondary Residence", though in truth and fact, and as JAMES well knew, she never had any intention of occupying and using the Perrone property as a second residence.

2

7.    It was further part of the scheme and artifice that defendant JAMES submitted and caused to be submitted to OVM Financial a Second Home Rider in her application to OVM Financial for the purchase of the Peronne property in which she falsely represented that she would occupy and use the Perrone Property as her second home, though in truth and fact, and as JAMES well knew, she never had any intention of occupying and using the Perrone property as a second home.

8.    It was further part of the scheme and artifice that defendant JAMES submitted and caused to be submitted to OVM Financial an Affidavit of Occupancy in her application to OVM Financial for the purchase of the Peronne property in which she falsely represented that she would occupy the Perrone Property as her second home, though in truth and fact, and as JAMES well knew, she never had any intention of occupying the Perrone property as a second home.

9.    It was further part of the scheme and artifice that defendant JAMES submitted and caused to be submitted various applications for homeowner's insurance policies for the Perrone property in which she falsely represented that the Perrone property would be occupied by JAMES, though in truth and fact, and as JAMES well knew, she never had any intention of occupying the Perrone property.

10.    It was further part of the scheme and artifice that defendant JAMES intended to purchase a home for a family member who would not otherwise qualify for a mortgage loan on her own and that family member continuously occupied the Perrone property after JAMES purchased it.

11.    It was further part of the scheme and artifice to defraud that defendant JAMES, in the years following the Perrone property purchase, continued to reserve various hotel rooms when visiting the Norfolk, Virginia area.

3

12.     It was further part of the scheme and artifice to defraud that defendant JAMES authorized to be filed on her behalf Schedule E to her federal income tax returns for the tax years 2020, 2021, and 2022 in which she represented that the Peronne property was rental real estate for which she had zero (0) personal use days.

13.     It was further part of the scheme and artifice to defraud that defendant JAMES filed various Financial Disclosure Statements for the years 2020, 2021, 2022, and 2023, with the state of New York in which she represented that the Perrone property was investment real estate and not a primary or secondary residence.

14.     It was further part of the scheme and artifice to defraud that defendant JAMES, through her materially false representations, secured a mortgage for the Perrone property that her family member could not have qualified for, and secured a better interest rate for the Perrone property by falsely indicating she would occupy and use it as a second residence, and obtained a seller credit higher than she would have otherwise received, had she accurately represented the purchase of the Perrone property as an investment property.

## ACTS IN EXECUTION OF THE SCHEME AND ARTIFICE

15.     On or about July 28, 2020, defendant JAMES, submitted a residential loan application to OVM Financial for the purchase of the Peronne property, a three (3) bedroom, one (1) bathroom residence with a final sales price of approximately $137,000 in which she falsely represented that the Peronne property would be a "Secondary Residence."

16.     On or about August 17, 2020, defendant JAMES submitted a second residential loan application to OVM Financial for the purchase of the Peronne property in which she again falsely represented that the Peronne property would be used as a "Secondary Residence."

17.     On or about August 17, 2020, defendant JAMES submitted a Second Home Rider

4

in her application to OVM Financial for the purchase of the Peronne property in which JAMES falsely represented that she would:

    a.    "occupy and use the [Peronne property] as [JAMES's] second home;"

    b.    "maintain exclusive control over the occupancy of the [Peronne property];"

    c.    refrain from giving "any other person . . . any control over the occupancy or use of the [Peronne property];" and

    d.    "keep the [Peronne property] available primarily as a residence for [JAMES's] personal use and enjoyment for at least one year after the date of the Second Home Rider," i.e., August 17, 2020.

18.    On or about August 17, 2020, on the Second Home Rider referenced directly above, JAMES acknowledged that "[m]aterial representations include, but are not limited to, representations concerning [JAMES's] occupancy of the [Peronne property] as [JAMES's] second home."

19.    On or about August 17, 2020, defendant JAMES submitted an Affidavit of Occupancy in her application to OVM Financial for the purchase of the Peronne property in which, "upon being duly sworn, depose[d]," she:

    a.    represented that she, as the sole borrower, would: "occupy the property as a second home (vacation, etc) while maintaining a principal residence elsewhere;" and

    b.    "acknowledge[d] that this Affidavit of Occupancy is given as a material inducement to cause: OVM Financial, Inc. to make a mortgage loan to [JAMES] and that any false statements, misrepresentations or material omissions shall constitute a breach of [JAMES's] obligation to: OVM

Financial, Inc."

20. On or about August 25, 2020, defendant JAMES submitted to Universal Property & Casualty Insurance Company (Universal) an application for homeowner's insurance wherein defendant falsely represented that the Peronne property would be "owner" occupied "non-seasonal" use.

21. On or about October 17, 2020, defendant JAMES submitted to AllState Vehicle and Property Insurance Company (AllState) an application for homeowner's insurance wherein defendant falsely represented that she would be the Peronne property's sole adult occupant and that the "[t]otal number of residents in the household including children" would be "1."

22. In or about tax years 2020, 2021, and 2022, defendant JAMES authorized to be filed on her behalf Schedule E to her federal income tax returns in which she represented that the Peronne property was rental real estate for which she had zero (0) personal use days.

23. In or about calendar years 2020, 2021, 2022, and 2023, defendant JAMES filed with the New York State Commission on Ethics and Lobbying in Government her annual Financial Disclosure Statement, which represented the Peronne property as "investment real estate" and said Financial Disclosure Statements instructed defendant to "NOT list any real property which is the primary or secondary personal residence of the reporting individual . . ."

(In violation of Title 18, United States Code, Section 1344.)

## COUNT TWO

24. The General Allegations and factual allegations of the Indictment are incorporated as if fully repeated verbatim herein.

25. On or about August 17, 2020, in the Eastern District of Virginia and elsewhere, defendant LETITIA A. JAMES, did knowingly make a materially false statement and report for

6

the purpose of influencing in any way the actions of OVM Financial, a mortgage lending company and financial institution, in connection with an application, advance, discount, purchase, purchase agreement, commitment, and loan, in that defendant JAMES, provided false information to OVM Financial on a document entitled "Second Home Rider", wherein JAMES falsely declared her intent to occupy and use the Perrone property as a second home, or words to that effect, when in truth and fact, and as JAMES well knew, she never had any intention of occupying and using the Perrone property as a second home.

(In violation of Title 18, United States Code, Section 1014.)

## COUNT THREE

26.     The General Allegations and factual allegations of the Indictment are incorporated as if fully repeated verbatim herein.

27.     On or about August 17, 2020, in the Eastern District of Virginia and elsewhere, defendant LETITIA A. JAMES, did knowingly make a materially false statement and report for the purpose of influencing in any way the actions of OVM Financial, a mortgage lending company and financial institution, in connection with an application, advance, discount, purchase, purchase agreement, commitment, and loan, in that defendant JAMES, provided false information to OVM Financial on a document entitled "Affidavit of Occupancy", wherein JAMES falsely declared her intent to occupy the Perrone property as a second home, or words to that effect, when in truth and fact, and as JAMES well knew, she never had any intention of occupying the Perrone property as a second home.

(In violation of Title 18, United States Code, Section 1014.)

_____

## FORFEITURE

THE GRAND JURY FURTHER FINDS PROBABLE CAUSE THAT:

1. The defendant, if convicted of any of the violations alleged in Counts One through Three of this indictment, shall forfeit to the United States, as part of the sentencing pursuant to Federal Rule of Criminal Procedure 32.2, any property constituting, or derived from, proceeds obtained directly or indirectly, as the result of the violation.

2. If any property that is subject to forfeiture above is not available, it is the intention of the United States to seek an order forfeiting substitute assets pursuant to Title 21, United States Code, Section 853(p) and Federal Rule of Criminal Procedure 32.2(e).

   (In accordance with Title 18, United States Code, Section 982(a)(2)(A).)

8

United States v. Letitia A. James
Criminal No. 2:25cr

A TRUE BILL:

_____

FOREPERSON

LINDSEY HALLIGAN
UNITED STATES ATTORNEY AND SPECIAL ATTORNEY

TODD W. BLANCHE
DEPUTY ATTORNEY GENERAL

ROBERT K. MCBRIDE
FIRST ASSISTANT UNITED STATES ATTORNEY

By: _____
Roger A. Keller, Jr. MO. #42541
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Office Number (757) 441-6331
Facsimile Number (757) 441-6689
E-Mail Address – Roger.Keller@usdoj.gov

9

No.    __2:25-CR-_____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division
**THE UNITED STATES OF AMERICA**
*vs.*
**LETITIA A. JAMES**

## INDICTMENT

Count  1:  In violation of 18 U.S.C. § 1344      Bank Fraud
Count  2:  In violation of 18 U.S.C. § 1014      False Statements on a Loan Application
Count  3:  In violation of 18 U.S.C. § 1014      False Statements on a Loan Application

Forfeiture: 18 U.S.C. § 982(a)(2)(A)

*A true bill.*

_____
                                                          *Foreman*

*Filed in open court this 11th day, of December A. D. 2025*

_____
                                                          *Clerk*

Bail, $_____

_____